# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO



BRIAN ELLSWORTH, a single man;
RONALD W. ELLSWORTH, a married man;
NANCY J. ELLSWORTH, a single woman;
SYLVESTER U. and REBECCA J. AKPAN,
husband and wife, and the marital community
comprised thereof; and the DORIS J.
ELLSWORTH RESIDUARY TRUST,

Plaintiffs,

v.

MARGARET ("MARGIE") ANDERSON and
JOHN DOE ANDERSON, husband and wife,
and the marital community comprised thereof;
COMMERCIAL LENDING NORTHWEST,
INC., a Washington corporation; RYDYN
ENTERPRISES, L.L.C., a Washington Limited
Liability company; ATTESA CORPORATION,
a Washington corporation; and JO BURSEY, a
married woman,

Defendants

Case No. 10-20651-TLM

Adversary No. 10-7039-TLM

~~COMPLAINT TO DETERMINE
DISCHARGEABILITY OF DEBT; A
OBJECTION TO DISCHARGE~~

Answer to Complaint

Margie Anderson Defendant, a married woman hereby responds to the statements/allegations made by Ellsworth as a Plaintiff in this case through his attorney Douglas Siddoway.

There are many incorrect statements within the Adversary Claim and in particular as they are applied to Margie Anderson, Commercial Lending Northwest Inc and the Washington State Case need to be rectified if this Adversary Claim is to be addressed by this Court.

As a loan facilitator, Commercial Lending NW Inc, (CLNW), through attorney, Pete Hawkins followed instructions given by a federally ensured FDIC, First Integrity Bank out of Staples Minnesota. Over a course of seven years, Anderson has been in this same lawsuit with approximately 7 other participants, who were attempting to sue Anderson, CLNW, Rydyn Enterprises and above all **First Integrity Bank, (FIB).**

In the later part of 2008 First Integrity Bank was taken over by the regulators. FIB was put into receivership, and shut down in 2009. In August of 2009 those plaintiffs dropped the lawsuit against Anderson, Bursey, Rydyn, and CLNW **with prejudice** and without costs.

Recently Anderson has had to file Chapter 7 Bankruptcy due to the recessionary environment and inability to earn modest income. Currently all assets are either in foreclosure and or being repossessed.

Out of personal vendetta and vengeance, Ellsworth continues to proceed with suit. Anderson is virtually penniless and currently in the process of losing her primary residence and all other assets to foreclosure.

It will be extremely difficult to prove Anderson intentionally misrepresented the plaintiffs in an attempt to defraud them, when we have signed authorizations, by each plaintiff they understood the funds were put into a Certificate of deposit, used as security, earning 13.99%.

As to the response of Objection to Discharge of the Anderson Chapter 7 Bankruptcy. As in under no uncertain terms did Anderson, transfer assets, conceal or remove property within one year of filing Chapter 7 Bankruptcy. All assets have been accounted for and noted.

I am faithfully requesting the Judge to please object to a continuance via federal court proceedings.


I respond to the allegations by the item number presented by Mr. Siddoway as follows:

3.3 Incorrect statements. In the early part of 2002 Brian Ellsworth contacted Plaintiff Margie Anderson via phone call solicitation. His solicitation was in pursuit of investing funds of his own, coupled with his RBC Dain Rauscher Portfolio clients. The primary objective was to obtain a higher yield securing bridge financing and obtain fees outside of his primary position as a licensed seasoned practicing securities stock broker gainfully employed by RBC Dain Rauscher. At various times Brian would take his clients from his Employer, RBC Dain Rauscher stock portfolio to invest their funds in commercial real estate secured bridge financing. Brain received substantial loan fees from these transactions outside of RBC Dain Rauscher and without their knowledge of such dealings at the time.

3.6     Incorrect. Mr West was an experience commercial developer.

Jo Bursey was introduced to First Integrity Bank by a correspondent of the bank, Mel Hentoff. Through that relationship, First Integrity Bank informed Bursey from the beginning that there would need to be a "Guarantor" for them to loan Attesa or West any funds and that they if they provided funds for the Surprise commercial lot development would only consider the sale of the lots as repayment of their loan. The "Guarantor" was a CD that was provided by the defendants and others to guarantee First Integrity Bank that they would have someone other than West and or Attesa to recapture their loan from should the lots not sell as indicated.

This is a highly relevant issue as all the way through Ellsworth and Plaintiffs have indicated that they were to be in a first position with the lender at all times that was never a part of this loan structure - the repayment for this loan was to come from the sale of lots developed

The lots were never developed because West and Attesa confiscated funds from the loan proceeds and converted them to their personal use and then declared Bankruptcy and walked away. The theft of loan funds unfortunately was not discovered until well after the investors CD was taken by the Bank pursuant to the notices and filings delivered to the Plaintiffs.

The exception was that Mr. Ellsworth and one other investor were granted a first mortgage participation in the Attesa loan by First Integrity Bank. Having that first position should have allowed Ellsworth to act upon the defaults and cure them to continue the development of the lots without West and Attesa - he did nothing to protect the interest that the Bank allowed him. That first mortgage position should also remove this adversary claim as well as he did receive what he is claiming he did not.

3.9 This is totally untrue – Ellsworth solicited his own clients at RBC Dain Rausch well to the detriment of his employer. Ellsworth orchestrated all the investors coming into the Surprise Arizona Anderson did not know these investors for the most part (with the exception of one or two) before Ellsworth brought them in to this deal.

3.9 a. Anderson did not inform participants of a first position with FIB. FIB would only allow two co-participants. Brain was well aware of that fact, by allowing him and Marilyn Mowat in first position with the bank post close. First Integrity Bank required that the investors agree and Authorize that their funds would be utilized to purchase a CD and use that CD as a guaranty to First Integrity Bank to allow the Bank to loan the amount necessary for the Surprise property development. (Exhibit A)

b. There was never a time when First Integrity Bank allowed that the investors would become participants in first lien position and in fact each investor by request of the Bank had to sign an "Authorization" for the Bank which clearly says that they understood that their funds would be utilized on behalf of the Bank as the purchase of a Certificate of Deposit which would then be utilized as a guaranty of the loan to Attesa. Ellsworth signed that authorization as did each and every member of Rydyn (which included all investors). This Authorization clearly states that they understood what was to happen with their funds and that they agreed to the Bank's terms and conditions.

Ellsworth and his attorney continue to ignore this Authorization which has been produced in the case many times - in fact it was the document that made the original attorney for the plaintiffs restate his claim after seeing that document while in a deposition. Roger Reed claimed originally that his investor clients did not know their funds would be put in a CD and used as a guaranty and it was done without their knowledge or approval. A very false statement and one that Ellsworth is again making in 39.b

39.c The Bank provided a 90 day loan because that's what West and Attesa indicated it would take to complete the lot development -- never because there was a take out loan from Universal Online Corporation.

3.10 Investors did not RELY upon 39. (a, b,c) the Authorization says differently.

3.11 Ellsworth now is making claims that he added additional funds and relied upon having a first position in the Bank loan and lost his funds due to all kinds of acts of Anderson and Bursey. The facts say differently. Ellsworth did indeed have a first position in the loan made by the Bank post the loan closing but asked for it for himself and Mowatt while ignoring all the other investors including those family members still filing this adversary claim as "Plaintiffs"

3.12 The Bank issued loan documents to Anderson on behalf of Rydyn members and Attesa's loan. Rydyn had an attorney that the Bank and Bursey delivered all documents to for the loan closing including but not limited to the requirement that the Authorization for the use of the Rydyn investor funds being used to purchase the CD and that CD being used as a guaranty. Bursey delivered every request from the bank and never was there an indication that the bank would allow Rydyn investor to be a participant in their first mortgage documents. Ellsworth made the request post closing of the loan for him and Mowatt to be participants and the Bank allowed their first position post loan closing restricted to a total of $200,000 of the loan amount. The bank did that however post closing of the Attesa loan.

3.13 A. Peter Hawkins attorney for Rydyn Enterpises form the appropriate LLC formation documents under the Banks direction requiring that the list of investors be consolidated into an entity for the purpose of being able to have someone of authority speak for the unit of investors. The Bank asked for the formation of that entity. Anderson, appointed as Managing Member by the entire membership of Rydyn and authorized to complete the loan on behalf of Rydyn. Anderson was appointed managing member, of Rydyn was correct, however, Ellsworth was a party to all decisions. The plaintiffs gave her that authority in writing and the Bank required evidence of such authority. **The LLC agreement indemnifies Margie Anderson as managing member as well.**

Anderson did not materially change any of the terms the Bank determined what terms and conditions would apply. Anderson and Rydyn's attorney were advised that the Bank required additional collateral in order to provide funds for the Surprise project and when in the closing process required the Authorization signed by each and every member of Rydyn which clearly states that their funds are going into a CD and that CD is going to guaranty the Attesa loan. It did not say they were to get a first position in the loan and it was never a part of the loan process or decision.

3.13. B   AGAIN Ellsworth through his attorney make the statement that without their knowing and consent the investors were "stripped of their position as lenders to Attesa whose loans would be protected by a first lien security interest in the Surprise, Arizona property".  This was never the case - those investors received from Attesa a promissory note which in itself was in conflict with the terms of the loan the Bank made to Attesa as it represented even further debt than that revealed to the Bank by West. The Bank and Bursey did not know the promissory note existed until well after the loan.  These investors signed an authorization that said they were purchasing a CD with their funds and that CD was to be used to collateralize the loan and guaranty the loan to the Bank. They knew that was the use of their funds. Roger Reed even modified the first claim made by Ellsworth after seeing the authorization document in a deposition. Ellsworth through his attorney continues to make this false claim.

3.13. C the investors from day one, knew they were getting a 13.99% return on their money in the form of a CD. The primary repayment would be the sale of the lots that would retire the entire loan. The investors all of them gave their informed consent when they signed the authorization to the Bank stating their funds would become a CD and that CD used as a guaranty of the loan to Attesa.  Because Ellsworth and his attorney continue to ignore that document they continue their quest to the vendetta level against Anderson and Bursey. The fact is that all investors in Rydyn gave the Bank their consent for their funds to be utilized as such and the Bank would not have closed the Attesa loan without such authorization to prevent just what this lawsuit is all about -- investors coming back after the fact stating they didn't know what happened to their investment.

3.13 d. Jo Bursey and Anderson object to the term "loan funds" from Rydyn. Rydyn purchased a CD with their funds.

3.13 are completely untrue and mis-numbered.

3.14 The Rydyn investors had ample time to review the Authorization as to the structure of use of their funds before signing it. It is untrue to state that "no reasonable investor would have given its informed consent" The demise of the Surprise project and the Attesa loan was created by only Robert West and Attesa who stole so much of the loan funds there wasn't sufficient funds to complete the development of the commercial loans which the sales proceeds should have been sufficient to not just pay off the Attesa loan at the Bank but to provide Rydyn a sizeable profit.

3.15 The Bank trying to be fair to Rydyn agrees that a part of their interest payment would be sent to Rydyn for distribution to the members. That was done by the Bank.

3.16 First Integrity Bank did not perform their fiduciary responsibility as normal protocol in releasing draw requests. We all assumed FIB performed inspections prior to releasing the draw. Inspections by the bank is a normal course of protocol in performing due diligence of developments. West however produced falsified lien waivers to the bank and based upon those lien waivers and West' certified use of funds statements released development funds to him.

3.18 The Bank did not discover until after the loan default that the monies were diverted by West Attesa to their personal obligations. The default occurred when West Attesa stopped making payments to the Bank.

Ellsworth and his attorney fail to mention here that the Bank sent out many notices before taking the CD and copied all members of Rydyn in those notices. Not one member including Ellsworth called the Bank to discuss any other possibilities and with the lack of any communication the Bank took possession of the CD. Ellsworth at that time had a participating first position with the Bank and should have contacted the bank to make arrangements to take over the project - he did nothing until the CD was taken and the property foreclosed upon. Ellsworth also received a fee for the closing of the loan to Attesa by the Bank -- a fee similar to that paid to Anderson and to Bursey something he does not acknowledge and certainly changes his relationship with the investors he brought to Anderson.

3.19 The Rydyn investors lost their monies because of the misappropriation that Ellsworth clearly defines in 3.17 that is why the project and their funds were lost. The Bank sent notices to the Rydyn members and even just before taking of the CD did it again even though they were not again required to do so.

4.3 There was never intent to defraud anyone. The investors came into a project as did the Bank with the understanding that the developer West/Attesa would do the right thing and utilize the development funds to construct commercial lots which would be sold for sufficient funds to pay the Bank and realize a profit. They were covered by a promissory note from West/Attesa which again they did nothing to proceed against to get control of the project. Ellsworth himself had a participation in the first mortgage and did nothing to preserve or protect his interest. Everyone just sat down and did nothing until they filed a lawsuit claiming foul - there was "foul" but it was West/Attesa that created the "foul" not Anderson/Bursey .

4.4 Ellsworth a licensed securities broker. If there was a violation of Securities Act, I would have felt Ellsworth as an experienced securities broker would know that. In addition, at the time of putting participants together in one transaction, Pete Hawkins, provided exhibit from his law book, that this is not considered a securitized violation, unless you put more than 16 individuals in one transaction. There was never a deliberate attempt to miss represent, or defraud plaintiffs.

Anderson provided exhibits and memorandums as directed by First Integrity Bank and Rydyns attorney Pete Hawkins.   The Bank approved the transaction according to the terms they set out and Bursey simply delivered those terms and conditions to Rydyn and West/Attesa.   Anderson had no participation in nor did control over the terms the Bank issue an only provided the documentation that the Bank required which included an Authorization by each and every member of Rydyn to those terms for the utilization of the funds they provided.  Anderson in no way deliberately misled or purposely and intentionally produce statements that were materially or otherwise detrimental to the investors or to West/Attesa or the Surprise project for that matter.

Anderson had no control and would not have taken any direct or otherwise as the Bank made all their own decisions.  The Bank is no longer in business and West /Attesa filed Bankruptcy. The facts are that the demise of the Surprise project and the loss of the investors were solely attributable to West/Attesa and the misappropriation of funds.

4.6 Anderson simply provided the financial exhibits on Attessa, Bob West to Bursey, whereas through her contact at First Integrity Bank approved   the financing.  FIB and set the terms and conditions of approval.  The information was relayed back to the plaintiffs.  Rydyn Enterprises an LLC owned and operated by the very plaintiffs that are suing.  In essence they are suing their own LLC.  Bursey was involved to the extent of directing Anderson, and attorney Pete Hawkins via FIB's approval and what exhibits were required.   Anderson had no ability to control directly or indirectly what a federally regulated bank required to close that loan.  **It is a fact, however, that each member of Rydyn did sign an authorization which clearly set out those terms as it applied to their investment dollars solely for the purpose of seeing that there would never be a lawsuit filed that said otherwise.  A full fair and in writing disclosure of all the terms and conditions was made to Rydyn's attorney Peter Hawkins before and during the loan process.**

5.2 Anderson did not purposely or internationally misrepresent plaintiffs.   Anderson was acting under accordance with directions from FIB.

5.2 b The Bank would not have taken the CD or foreclosed if one member of Rydyn had contacted them including Ellsworth.  They did not respond to any of the many notices the bank provided to bring them forward and possibly work out another alternative for the Bank and the Rydyn investors.

5.3 Anderson did not misrepresent any and all documents and loan matters were determined by the Bank.  FIB provided instructions, via Jo Bursey, and   Rydyn's attorney.  At any time before closing since the Rydyn investors were asked by the Bank to acknowledge and authorize the transaction for the CD and the guaranty could any one of the Rydyn investors and particularly Mr. Ellsworth have removed themselves from this loan.

6.2   Anderson did not intentionally demonstrate any mis representation of any kind or like -- there was no omission of fact as the terms and conditions of the loan were clearly set by the bank and the documentation and requirements solely by that Bank.

6.3 This is a personal vendetta, brought on by Ellsworth. He has achieved his goal in bringing Anderson and family to insolvency. Anderson is losing all assets to foreclosure, and is currently in Chapter 7 Bankruptcy.

7.2 . This claim is false completely false. To state that "these defendants agreed that if plaintiffs advanced monies to be loaned to Attesa and West" .......is a lie. The Rydyn investors got a promissory note from West/Attesa without the knowledge or agreement of the Bank. When the second extension was requested, Bursey and Anderson received a commitment of a takeout lender known as FA Financial. When that failed after many months Litchfield Capital came in prior to the bank taking down the CD to provide a new loan keeping the participants in an complete the development on the lots and hotel. Ellsworth over rode that decision without the knowledge of the plaintiffs and they lost their money.

7.37 This claim is ridiculous. West/Attesa stole funds that were ear marked to develop the lots in Surprise that is why the project failed. Never did these investors have a first position in the bank loan until Ellsworth post closing was granted one for him and Marlyn Mowath @ $200,000 total. Rydyn lost their monies also because there was no response by any one of them including Ellsworth to the many multiple notices provided by the Bank stating that they were going to take the CD and foreclose long before they did.

8.2 The Bank made it very clear from the beginning that their loan limit was such that it needed additional funds to grant the loan. There was no secret by the bank as to its legal limit. The bank required the funds to go into a CD and the guaranty of that CD to grant the loan. The Rydyn investors approved and authorized that structure in a document totally being ignored in this case.

The investors went into a project in Surprise Arizona wherein commercial lots were to be developed in a market where they should have been readily saleable. West/Attesa did not complete the lots rather choosing to steal the funds from the loan for their personal gain. The return to the investors would have been substantial had the lots been completed and sold as proposed.  No one solicited monies or misrepresented anything these investors through Anderson and their own attorney Hawkins knew exactly what the terms of the Bank loan were.

Dated this 14th day of September 2010

By: *(signature: Margie Anderson)*

Margie Anderson

6622 N Perrine Rd

Spokane Wa  99217


Certified to be true and correct this 14th day of September, 2010 by Margie Anderson,

*(signature: Margie Anderson)*

Margie Anderson

John Doe Anderson

Commercial Lending NW Inc

6622 N Perrine Rd

Spokane Wa  99217

*Walt Anderson*
*Walt Anch——*      9/15/10

Service provided this date of September 14th 2010 to:

United States Bankruptcy Court

District of Idaho

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON 99201-0653
(509) 747-2052

Jo Bursey by email delivery