1
2
3
4
5

Douglas J. Siddoway
Randall | Danskin, P.S.
601 W. Riverside Ave., Suite 1500
Spokane, WA  99201
(509) 747-2052
(509) 624-2528 F
djs@randalldanskin.com

6
7

8
9

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

10  In re: WALTER D. ANDERSON and MARGIE
    A. ANDERSON,

11
                                                        Case No. 10-20651-TLM
12          Debtors.
                                                        Adversary No. 10-07039-TLM
13  BRIAN ELLSWORTH, a single man;
14  RONALD W. ELLSWORTH, a married man;          MEMORANDUM IN SUPPORT OF
    NANCY J. ELLSWORTH, a single woman;          PLAINTIFFS' AMENDED MOTION
15  SYLVESTER U. and REBECCA J. AKPAN,           FOR DEFAULT JUDGMENT
    husband and wife, and the marital community
16  comprised thereof; and the DORIS J.
17  ELLSWORTH RESIDUARY TRUST,

18          Plaintiffs,
19
    v.
20
21  MARGARET ("MARGIE") ANDERSON and
    JOHN DOE ANDERSON, husband and wife,
22  and the marital community comprised thereof;
    COMMERCIAL LENDING NORTHWEST,
23  INC., a Washington corporation; RYDYN
    ENTERPRISES, L.L.C., a Washington Limited
24  Liability company; ATTESA CORPORATION,
    a Washington corporation; and JO BURSEY, a
25  married woman,
26
27          Defendants.
28

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 1

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

## I.    INTRODUCTION

Plaintiffs' motion for a default judgment against non-debtor defendants Commercial Lending Northwest, Inc. ("Commercial Lending Northwest"), Rydyn Enterprises, LLC ("Rydyn") and Attesa Corporation ("Attesa") (Docket No. 20) was heard by the Court on May 3, 2011.  At the conclusion of the hearing, the Court asked plaintiffs to submit a memorandum addressing the Court's jurisdiction and to provide additional information concerning the amount of the judgment they are seeking.

Plaintiffs submit this memorandum in response to the Court's request.  The jurisdiction issue is addressed in Section IV, beginning at page 25.  It is preceded by a discussion of the nature of the case and its procedural history (in Section II, which also includes information substantiating the amount of plaintiffs' requested judgment) and a discussion of the legal basis of plaintiffs' claims for relief (in Section III).  Plaintiffs have included Sections II and III primarily as background, believing such information may be useful to the Court in determining whether to retain jurisdiction.

## II.    NATURE OF THE CASE AND PROCEDURAL HISTORY

### A.    Nature of the Case.

Defendant, Margaret ("Margie") Anderson is the owner of Commercial Lending Northwest, a Spokane company that acts as a broker and identifies investors willing to make what are called "bridge" loans.  "Bridge" loans are made to borrowers who have identified a long-term lender, but need funds for the several months before their

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 2

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1    permanent loan will close.  Defendant Jo Bursey is a Florida mortgage broker who

2    worked closely with Margie Anderson on the transaction that is at issue in this case.

3           The plaintiffs were solicited by Anderson in 2003.  They and other Spokane

4    investors made available a total of $1.7 million available for what was originally to be a

5    90-day loan to Attesa, which was developing a hotel and retail property in Surprise,

6    Arizona.  It was represented to the plaintiffs and other Spokane investors, verbally and in

7    writing, that they were protected in making the investment in the loan to Attesa by,

8    among other things: their participation in a "first deed of trust" position in Attesa's

9    commercial real estate; the supposedly substantial appraised value of that real estate; the

10   viability of Attesa; its principal (Robert West); and its project and the fact that Attesa had

11   already lined up a permanent "take out" lender who would repay the short-term loan

12   within 90 days.

13          At the urging and with the extensive assistance by Bursey, the structure of the

14   investment was changed, with the investors receiving passive membership interests in

15   Rydyn, an entity conceived by Bursey and First Integrity Bank, a lender represented by

16   Bursey.  Anderson was installed as the sole manager of Rydyn.  With Rydyn established

17   and Anderson positioned to deal unilaterally on its behalf, Rydyn sold out the secured

18   position that induced the plaintiffs and other investors to invest.  After having been

19   promised that they would be more-than-fully secured by a first deed of trust, the plaintiffs

20   were transformed into equity investors no better protected than their borrower, Attesa,

21   and with the entire amount of their investment going to protect First Integrity Bank.  No

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 3

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

one in their right mind would have agreed to this change.  The investors were materially misled.  Anderson, Bursey and the other defendants knew or clearly should have known that none of the plaintiffs would have agreed to participate in the investment as restructured if the true nature of their interest and its risks had been fully and fairly disclosed.

All of the material representations about the safety of the investment turned out to be false, and the plaintiffs learned of many material facts that were never disclosed.  Within a year, Attesa's Surprise, Arizona development had failed.  With the exception of minor returns on investment and interest paid to them before Attesa defaulted and lost the property, all of the plaintiffs lost their entire investments.  Anderson, Bursey, Rydyn, Commercial Lending Northwest and Attesa knew of, but withheld information about the many problems.

Plaintiffs have asserted claims for violations of the Washington State Securities Act, fraud, negligent misrepresentation, breach of contract and civil conspiracy.

**B.** **Procedural History.**

Case No. 05-2-00221-7, *Dupree v. Anderson et al.,* was commenced in January 2005 in Spokane County Superior Court.  The *Dupree* plaintiffs were originally represented by Roger Reed and Reed & Giesa, P.S. of Spokane.  The complaint was amended twice, with the operative complaint being the Third Amended Complaint filed on June 15, 2006.  The following parties have been voluntarily dismissed or voluntarily dismissed their claims, for the reasons indicated:

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 4

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Defendant Demian Kruchten**, a lawyer for First Integrity Bank, prevailed in a motion to dismiss on personal jurisdiction grounds (the Bank's and Jo Burseys' motions to dismiss on this basis were denied),

**Defendants Robert and Maryl West** filed for bankruptcy protection and were dropped as defendants,

**Defendant First Integrity Bank** was placed into receivership by the Office of the Comptroller of the Currency, and after the FDIC was substituted for it as a party, the plaintiffs voluntarily dismissed their claims against the FDIC rather than pursue their case in Minnesota, as would be required; and

**Plaintiffs other than the Ellsworth Trust and Ellsworth and Akpan family members** voluntarily dismissed their claims in August 2009 in light of the growing expense of the litigation.

In addition, Brian Ellsworth, himself an investor, was originally named a defendant because he had introduced the plaintiffs to Margie Anderson and Commercial Lending Northwest, and had characterized them as a reputable mortgage broker and firm, something he believed at the time.  He settled with the original plaintiffs with the understanding and agreement that his family members could join the plaintiffs' lawsuit and that he, intending to bring his own lawsuit, would be provided with access to the discovery that had been completed and was ongoing by the Reed & Giesa firm.

The *Dupree* plaintiffs comprise the following individuals, who claimed the following damages:

| | |
|---|---|
| The Doris J. Ellsworth Residuary Trust | $115,000.00 principal invested, plus 8% prejudgment interest since June 2003, less small distributions received in 2003 and 2004, plus attorneys fees and costs |
| Sylvester and Rebecca Akpan | $20,000.00 in principal amount, plus same prejudgment interest, fees and costs, subject to adjustment for small distributions |

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 5

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

| | received in 2003 and 2004 |
|---|---|
| Ronald Ellsworth | $15,000.00 principal amount, same additions and adjustments |
| Nancy Ellsworth | $15,000.00 principal amount, same additions and adjustments |

The defendants in the *Dupree* case are Margie Anderson, her husband and marital community; Commercial Lending Northwest, by whom she was or is employed; Rydyn, for whom she serves as managing member; Jo Bursey; and Attesa.

  Case No. 06-2-04672-7, *Ellsworth v. Anderson et al.,* also in Spokane County Superior Court, was commenced by Brian Ellsworth in October 2006.   Defendants Kruchten, West and First Integrity Bank were dismissed from the action for the same reasons identified above.  The plaintiff is Brian Ellsworth, who claims the following damages:

| | |
|---|---|
| Brian Ellsworth | $265,000.00 principal invested, plus 8% prejudgment interest since June 2003, less small distributions received in 2003 and 2004, plus attorneys fees and costs |

The *Ellsworth* defendants in this case are the same as those in the first-filed *Dupree* case.

  The two Spokane County Superior Court cases were consolidated on February 15, 2008 by a stipulated order.   Discovery and motion practice were completed in December 2009 and trial was set to begin on June 1, 2010.  At the pretrial conference held on May 21, 2010 before Judge Leveque, Margie Anderson announced that she and

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 6

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

her husband would soon be filing for bankruptcy, whereupon Judge Leveque cancelled the trial setting.

Margie Anderson and her husband filed their bankruptcy petition on May 24, 2010. Plaintiffs commenced this adversary proceeding in August 2010, naming as defendants the same persons and entities that were named as defendants in the October 2006 *Ellsworth v. Anderson* case filed in Spokane County Superior Court—namely, the Andersons, Jo Bursey, Commercial Lending Northwest, Rydyn and Attea.

Jo Bursey ostensibly answered plaintiffs' adversary proceeding complaint on September 3, 2010. Margie Anderson and her husband ostensibly answered the complaint on September 10, 2010 by re-filing Jo Bursey's answer with their names substituted for hers in the preamble. Commercial Lending Northwest, Rydyn and Attesa have yet to answer.

### III. LEGAL ELEMENTS OF PLAINTIFFS' CLAIMS FOR RELIEF

#### A. The Washington State Securities Act Claim.

##### 1. Statute and the Security at Issue.

Any person who offers or sells a security in violation of RCW § 21.20.010 is liable to the person buying the security. R.C.W. § 21.20.430(1) (2002). RCW § 21.20.010 provides it is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 7

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

R.C.W. § 21.20.010 (2002).  Section 21.20.430(1) goes on to state that any person who violates Section 010 *is liable*:

> [T]o the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security.

R.C.W. § 21.20.430(1).

The WSSA is a remedial statute. *Go2net, Inc. v. Freeyellow.com, Inc.,* 126 Wn.App. 769, 775, 109 P.3d 875 (2005). Its primary purpose is to protect investors from speculative or fraudulent schemes of promoters. *Id.* (citing *Cellular Eng'g, Ltd. v. O'Neill,* 118 Wn.2d 16, 23-24, 820 P.2d 941 (1991)). Washington courts construe the WSSA broadly to effectuate its intent. *Haberman v. Wash. Pub. Power Supply Sys.,* 109 Wn.2d 107, 125-26, 744 P.2d 1032 (1987).

The interests in Rydyn offered to the plaintiffs were securities.[1]

---

[1] The interests in the bridge loan as originally offered (individual notes to individual lenders) were securities as well.   It is presumed under federal and state securities law that a "note" is a security.  *State v. Argo*, 81 Wn.App. at 562, citing *Reves v. Ernst & Young,* 494 U.S. 56 (1990), *aff'd,* 507 U.S. 170 (1993).  The WSSA makes this explicit.  The definition of "security" includes notes and evidences of indebtedness.    RCW 21.20.005(12)(a).   The only conceivably relevant, but inapplicable exemption, is for evidence of indebtedness secured by mortgages or deeds of trust that are sold in their entirety, not – as offered here - as participating interests. RCW 21.20.320(5).  Ownership

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 8

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

As observed in *State v. Argo,* 81 Wn.App. 552, 558-9, 915 P.2d 1103 (1996), the United States Supreme Court has stated that the definition of a security "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946).  In determining whether an investment constitutes a security, "form should be disregarded for substance and the emphasis should be on economic reality." *Argo, supra,* citing *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967).  Because the securities acts are remedial in nature and are designed to protect investors from speculative or fraudulent schemes of promoters, both Washington and federal courts apply a broad definition to the term "security." *Argo,* citing *S.E.C. v. Glenn W. Turner Enters.*, 474 F.2d 476, 480-81 (9th Cir.), *cert. denied*, 414 U.S. 821 (1973).

According to the Ninth Circuit, a "limited partnership generally is a security because, by definition, it involves investment in a common enterprise with profits to come solely from the efforts of others." *SEC v. Murphy,* 626 F.2d 633, 640-41 (9th Cir. 1980), citing *Howey,* 328 U.S. at 301; *SEC v. Holschuh,* 694 F.2d 130, 137 (7th Cir. 1982) (concurring).

Similarly, an interest in a limited liability company is an "investment contract" and thereby a security if it constitutes as (1) an investment of money (2) in a common

in the limited liability company – the form the investment ultimately took – is even more clearly a security.

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 9

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1    enterprise (3) with the expectation of profits produced by the efforts of others.   *Swartz v.*

2    *Deutsche Bank,* 2008 WL 1968948 * 18 (W.D.Wash. 2008), citing *S.E.C. v. W.J. Howey*

3    *Co.*, 328 U.S. 293, 298-99, 66 S.Ct. 1100 (1946).

4

5            **2.       Primary Liability.**

6            In *Haberman v. Washington Public Power Supply System,* 109 Wash.2d 107, 744

7    P.2d 1032, 750 P.2d 254 (1987) the Washington Supreme Court held that a defendant can

8    be held liable as a "seller" under the WSSA even if she was not in strict privity with an

9    investor.   Rather, the Court adopted a "substantial factor-proximate cause" analysis for

10   primary liability. [2]   One may be liable as a seller under the statute if one's acts were a

11   "substantial contributive factor" in the sales transaction.   109 Wn.2d at 130.   The

12   *Haberman* court listed three factors for a court to consider in determining whether a

13   defendant's conduct was a substantial contributing factor in the sales transaction:

14

15           (1) the number of other factors which contribute to the sale and the extent of the
                  effect which they have in producing it;

16

17           (2) whether the defendant's conduct has created a force or series of forces which
                  are in continuous and active operation up to the time of the sale, or has
                  created a situation harmless unless acted upon by other forces for which the
                  actor is not responsible; and

18

19

20

21           (3) lapse of time.

22   _____

23   [2] In *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the U.S.
     Supreme Court adopted a strict privity analysis in construing the federal securities statute
24   analogous to this provision. Notwithstanding that case, our Supreme Court subsequently
     reaffirmed its holding in *Haberman. Hoffer v. State,* 113 Wash.2d 148, 150, 776 P.2d 963
25   (1989).

26

27

28

MEMORANDUM IN SUPPORT OF                          **RANDALL | DANSKIN**
PLAINTIFFS' AMENDED MOTION FOR                    A Professional Service Corporation
DEFAULT JUDGEMENT - 10                            1500 BANK OF AMERICA FINANCIAL CENTER
                                                  601 WEST RIVERSIDE AVENUE
                                                  SPOKANE, WASHINGTON  99201-0653
                                                  (509) 747-2052

109 Wn.2d at 131-32.   The court explained that the substantial contributive factor

analysis expands the strict privity analysis to include those who "have the attributes of a

seller" and who "policy dictates should be subject to liability under RCW 21.20.430(1),

but who would escape primary liability for want of privity."   *Herrington v. David D.*

*Hawthorne, CPA, P.S.*, 111 Wn.App. 824, 47 P.3d 567 (Wash.App. Div. 1 2002), citing

Haberman at 132.  Whether a defendant's conduct was a substantial contributive factor is

necessarily a question of fact.  *Id.*

### 3.    Secondary Liability.

In addition to asserting that the defendants are primarily liable under the WSSA

as "substantial contributing factors" in the sale, plaintiffs contend in the alternative that

the defendants have liability as secondarily liable parties under the WSSA.   R.C.W.

Section 430(3) extends secondary liability to anyone who directly or indirectly controls a

seller or is an employee of a seller who materially aids in the transaction:

> [I]s also liable jointly and severally with and to the same extent as the seller or
> buy, unless such person sustains the burden of proof that he or she did not know,
> and in the exercise of reasonable care could not have known, of the existence of
> the facts by reason of which the liability is alleged to exist.  There is contribution
> as in cases of contract among the several persons so liable.

R.C.W. § 21.20.430(3).  In the Ninth Circuit, a "control" or "controlling" person is liable

for the acts of another if the controlling person "acted in bad faith and directly or

indirectly induced the conduce constituting a violation or cause of action."  *Burgess v.*

*Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984).  There can be no liability unless the

controlling person actually participated or was somehow involved in the activities which

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 11

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

are claimed to violate the securities laws.  *Id.*  This test was applied by the Ninth Circuit

in *Burgess* to WSSA claims: "there is no reason to infer that 'controlling person' has a

different meaning in Washington law than in federal law." *Id.* at 833.

Control is defined as "the possession, direct or indirect, of the power to direct or

cause the direction of the management and policies of a person, whether through

ownership of voting securities, by contract, or otherwise." *Hollinger v. Titan Capital

Corp.,* 914 F.2d 1564, 1572 n.16 (9th Cir. 1990) (citing 17 C.F.R. § 230.405).  Day-to-

day control need not be shown in order to establish control person liability. *In re Gupta

Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242 (N.D. Cal. 1994).

Unlike sellers, secondarily liable parties may assert an affirmative defense, as to

which they bear the burden of proof.  To avoid liability for the misrepresentation, a

secondarily liable party must prove that s/he did not know, and in the exercise of

reasonable care could not have known of the existence of the facts by reason of which the

liability is alleged to exist.  R.C.W. § 21.20.430(3).

### 4. Brian Ellsworth's Role as, at Best, a "Finder" Does Not Affect the Obligations of Any Defendant.

Throughout the Spokane County Superior Court pretrial process and in their

answers to plaintiffs' complaint in this adversary proceeding, the Anderson defendants

and Jo Bursey have continually raised the fact—not disputed—that Brian Ellsworth,

having invested through Margie Anderson in the past, introduced Anderson and

Commercial Lending Northwest to his family members, clients and friends as a reputable

mortgage broker and firm.  But it is also undisputed that he, Anderson and Commercial

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 12

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

Lending Northwest ever regarded Ellsworth as having any responsibility to sell or present the investment.  If Anderson or Commercial Lending Northwest had regarded him as having such a role, they would have been legally required to treat him as a commission salesperson for securities law and taxation purposes—something they never did.

An individual who does no more than introduce a potential investor or investors to a securities issuer or promoter may be paid a "finder's fee" for the introduction without registering as a broker-dealer.  See, generally, Davenport Management, Inc., SEC No-Action Letter (April 13, 1993); Paul Anka, SEC No-Action Letter (July 24, 1991); Victoria Bancroft, SEC No-Action Letter (August 9, 1987); Richard S. Appel, SEC No-Action Letter (February 14, 1983); Caplan & Drysdale, Chartered, SEC No-Action Letter (April 8, 1982); Carl A. Feinstock, SEC No-Action Letter (April 1, 1979); John DiMeno, SEC No-Action Letter (October 11, 1978).

### 5. Duties of the Defendants and Absence of Duty on the Part of the Plaintiffs.

#### a. Duty to Disclose.

A defendant who makes "directly or indirectly" an affirmative representation of a material fact to a purchaser of securities has a duty to make full, fair and accurate disclosure of all material facts.  *First Va. Bankshares v. Benson,* 559 F.2d 1307, 1317 (5th Cir. 1977); *Hannon v. Data Prod. Corp.,* 976 F.2d 497,504 (9th Cir. 1992); *Schneider c. Traweek,* 1990 WL 169856 at *10 (C.D. Cal. Sept. 5, 1990) *Intermodel Cargo Servs., Inc. v. Am. Indus., Ltd*., 1982 WL 1397 at *6 (N.D. Cal. Dec. 3, 1982). Furthermore, a duty to disclose arises from knowing participation in a fraudulent scheme

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 13

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

and from possession of inside information.  *Strong v. France,* 474 F.2d 747, 752 (9th Cir.

1973); *Cleary v. Perfectune, Inc.*, 700 F.2d 774, 777-78 (1st Cir. 1983), *rev'd on other*

*grounds.*  511 U.S. 164 (1995).  Since a half-truth is a misrepresentation, a defendant who

undertakes to say anything has a duty to speak the full truth.  *Id.*  If someone speaks at all

in the context of selling securities, they must do so fully, fairly, and truthfully.  *Id.*  This

is not a new or unique principle.  *See Levinson v. Basic, Inc.*, 786 F.2d 741, 746 (6th Cir.

1986) ("If a corporation is not under a duty to disclose corporate information, but

voluntarily chooses to make a statement and the statement is 'reasonably calculated to

influence the investing public,' the corporation then has a duty to disclose sufficient

information that the statement made is not 'false or misleading or . . . so incomplete as to

mislead'") (citations omitted*), overruled on other grounds, Basic, Inc. v. Levinson,* 485

U.S. 224, 108 S. Ct. 978 (1988); *Rose v. Ark. Valley Envtl. & Util. Auth.,* 562 F. Supp.

1180, 1207 (W.D. Mo. 1983) (the concept is "expressed in the literal terms of rule

10b-5(b) itself and has long been an integral part of the law of common law fraud and

deceit"); *Rowe v. Maremont Corp.,* 650 F. Supp. 1091, 1104 (N.D. Ill. 1986) ("when a

party undertakes to disclose anything, it has a duty to speak the full truth"), *aff'd,* 850

F.2d 1226 (7th Cir. 1988).

### b.      No Duty to Investigate.

Purchasers of securities have no duty to perform independent due diligence or to

independently verify the veracity of the facts they are being told.  They are entitled to

believe the materials they are provided and need do nothing more than read and analyze

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 14

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

what they are given. *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Express, Inc*., 886 F.2d 1249, 1256-7 (10th Cir. 1989) (citing *Sanders v. John Nuveen & Co., Inc*., 619 F.2d 1222, 1229 (7th Cir. 1980); *Wright v. Nat'l Warranty Co*., 953 F.2d 256, 262 (6th Cir. 1992). "A purchaser has no duty to investigate a seller's possible fraud and need not verify a statement's accuracy." *Wright,* 953 F.2d at 262*.*

> Section 12(2) *does not establish a graduated scale of duty depending upon the sophistication and access to information of the customer.* A plaintiff under 12(2) is not required to prove due diligence. All that is required is ignorance of the truth or omission. One scholar notes that 'it is a firmly entrenched principle of § 12(2) that the availability elsewhere of truthful information cannot excuse untruths or misleading omissions by the seller.'

*MidAmerica Fed. Sav. & Loan v. Shearson Am. Express, Inc*., 886 F.2d 1249, 1256-57 (10th Cir. 1989) (emphasis supplied) (citations omitted). *See also Casella v. Webb,* 883 F.2d 805, 809 (9th Cir. 1989) (interpreting Section 12(2) and holding that an investor is not required to prove due diligence, and lack of due diligence is not an affirmative defense). *See also Douglas Northwest, Inc. v. Bill O-Brien & Sons*, 64 Wash. App. 661, 679-80 (Wash. Ct. App. 1992) (party to whom a positive, distinct and definite representation has been made is entitled to rely on that representation and need not make further inquiry concerning the particular facts involved).

            **c.**      **The Effect of Investor Fault and Defendant Innocence on Rights of Recovery.**

      The WSSA expressly addresses whether and how any "relative fault" on the part of an investor affects the investor's right to rescission. If the Ellsworth and Akpan investors <u>themselves</u> violated the WSSA or acquired an investment with "knowledge of

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 15

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1   the facts by reason of which the sale of the security was in violation," they are denied a

2   remedy entirely.   R.C.W. § 21.20.430(5).   Otherwise, however, the WSSA **_affords_** a

3   remedy entirely, upon proof of a material misrepresentation or omission.   The statute

4   thereby rejects apportionment of fault.   By directly addressing both the respect in which

5   investor fault can limit recovery and the respect in which a defendant's limited fault can

6   avoid liability, the statute forecloses the Court from importing any different comparative

7   fault concept.

8           Courts from other jurisdictions have agreed that proportionate fault allocation

9   from general tort reform statutes cannot be grafted onto the Uniform Securities Act for

10  this reason.   In *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 382-3 (Iowa Ct.

11  App. 1989), the court refused to reduce an investor's award under the Iowa securities act

12  by the amount of his comparative fault (as required by Iowa's tort reform statute) because

13  the securities act did not provide for proportionate liability.   In *Duperier v. Texas State*

14  *Bank*, 28 S.W.3d 740, 753 (Tex. App. 2000), the court refused to submit the issue of

15  comparative fault to the jury on a claim under Texas's securities act (although required

16  by Texas's tort reform statute) because it would obviate express defenses provided by the

17  securities act.   The WSSA is to be "so construed as to effectuate its general purpose to

18  make uniform the law of those states which enact it and to coordinate the interpretation

19  and administration of this chapter with the related federal regulation."   R.C.W. §

20  21.20.900.

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 16

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1

**6.      Elements Not Required Under the WSSA.**

2

3          **a.      Neither Intent or Even Negligence Is an Element for
Claims Under Sections (1) and (3); Liability for
Primary Violators is Strict.**

4

5          Scienter is not an element of a WSSA claim against *any* defendant under Sections

6    (1) and (3) of 21.20.010.  See R.C.W. § 21.20.010 and 21.20.430(1) and (3); *Kittilson v.*

7    *Ford,* 93 Wash.2d 223, 225-27, 608 P.2d 264 (1980); *Burgess v. Premier Corp.,* 727 F.2d

8    826, 833 (9th Cir. 1990); *Aspelund v. Olerich*, 56 Wash. App. 477, 482, 784 P.2d 179

9    (1984).

10

11          There is no good faith defense for sellers of securities under Section 21.20.430(1).

12   *Haberman v. Wash. Pub. Power Supply Sys.,* 109 Wash.2d 107, 128-29, 744 P.2d 1032

13   (1987).  In *Haberman*, the Washington Supreme Court rejected a strict privity test for

14   "seller" status under R.C.W. § 21.20.430(1) and held that any participant who is a

15   substantial factor in the sales transaction may be held liable as a seller.  *Id.* at 126-131.

16   *Haberman* states that the fact-finder should utilize the following criteria in evaluating

17   whether the alleged conduct was a substantial contributive factor:

18

19          (1)  the number of other factors which contribute to the sale and the extent of the
            effect which they have in producing it;

20          (2)  whether the defendant's conduct has created a force or series of forces which
            are in continuous and active operation up to the time of the sale, or has created a
            situation harmless unless acted upon by other forces for which the actor is not
            responsible; and,

21          (3)  lapse of time.

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 17

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1    *Haberman,* 109 Wash.2d at 131-2; *Herrington v. Hawthorne,* 111

2    Wash. App. 824, 830-31, 47 P.3d 567, 570-71 (2002); RESTATEMENT (SECOND) OF TORTS

3    § 433 (1965).

4

5                      **b.      Causation Is Not an Element.**

6            Plaintiffs are not required to prove causation for claims asserted under Section

7    410 of the WSSA.  In *Hines v. Data Line Syss., Inc.,* 114 Wash.2d 127, 135, 787 P.2d 8

8    (1990), the Washington Supreme Court looked to the plain language of the Washington

9    State Securities Act in deciding that loss causation is not an element.   "R.C.W. §

10   21.20.010 makes it unlawful for a seller to make a material misrepresentation or omission

11   in connection with the sale of a security.  The violation is in the misrepresentation itself;

12   it is not how the misrepresentation affected the price of the stock."  *Id.* at 134-35.

13

14                     **c.      Mitigation of Damages Is Not an Element.**

15           Plaintiffs are not required to mitigate damages under WSSA.  *Odmark v. Westside*

16   *Bancorporation, Inc.,* 1988 WL 108288 at 1-2 (W.D. Wash. Mar. 9, 1988) (finding,

17   based upon *Randall v. Loftsgarden,* 478 U.S. 647 (1986), that mitigation is not required

18   under Washington Securities Act, which is patterned after Section 12(2) of the 1933 Act

19   [15 U.S.C. § 77l(2)]).

20

21                     **d.      Reliance Is Not an Element.**

22           Although there is dicta in several decisions suggesting reliance is an element of a

23   claim for rescission under the WSSA, there is no textual basis in the WSSA for requiring

24   proof of reliance.

25

26   MEMORANDUM IN SUPPORT OF
     PLAINTIFFS' AMENDED MOTION FOR
27   DEFAULT JUDGEMENT - 18

28

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

RCW § 21.20.430(1) provides that "[a]ny person, who offers or sells a security in violation of any provisions of 21.20.010, 21.20.140(1) or (2) or 21.20.180 through 21.20.230 is liable to the person buying the security from him or her" Reliance is not an express element of the statutory claim. *Id.* §§ 21.20.430(1), (3) and (7).

Requiring proof of reliance would be contrary to the purpose of the WSSA. RCW § 21.20.430 is patterned after Section 410 of the 1956 Uniform Securities Act, which is patterned in turn after Section 12(2) of the 1933 Act, 15 U.S.C. §77(l)(2). *See Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wash. 2d 107, 125, 744 P.2d 1032, 1048 (1987). The WSSA must be construed in harmony with the law of other states enacting the uniform act and related federal regulation, Wash. Rev. Code § 21.20.900, and case law interpreting those acts is persuasive authority, *Haberman*, 109 Wash. 2d at 125, 744 P.2d at 1049.

Reliance is not an element under Section 12(2) of the 1933 Act. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 576, 115 S. Ct. 1061, 1070, 131 L. Ed. 2d 1 (1995). Likewise, the drafters of the uniform securities act rejected "any requirement that the buyer prove reliance on the untrue statement or the omission." Louis Loss, *Commentary on the Uniform Securities Act 148 (1976) (Draftsmen's Commentary to §410(a))*. A buyer "must show only that *he did not know of it.*" *Id.*

The majority of states that have securities acts patterned after Section 410 of the Uniform Securities Act, Section 605 of the Uniform Revised Securities Act or Section 12(2) of the 1933 Act have held that reliance is not an element. *E.g., MidAmerica*

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 19

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

*Federal Savings and Loan Assoc. v. Shearson/American Exp., Inc.*, 886 F.2d 1249, 1255 (10th Circuit 1989); *Esser Distributing Co., Inc. v. Steidl*, 437 N.W.2d 884, 885-887 (Wis. 1989); *Gohler v. Wood*, 919 P.2d 561, 566 (Utah 1996); *Kronenberg v. Katz*, 872 A.2d 568, 598-599 (Del.Ch. 2004).

The Washington Supreme Court has held that "securities legislation is remedial in nature and has as its purpose broad protection of the public. Thus it is appropriate to construe the [WSSA] broadly in order to maximize the protection offered." *McClellan v. Sundholm*, 89 Wash. 2d 527, 533, 574 P.2d 371, 374 (1978). ). Yet, requiring proof of reliance would only serve to decrease the protection of the WSSA.

Despite the plain language of the WSSA, the foregoing considerable authority and the Washington courts' historic construction of the statute to maximize protection for investors, one sentence in *Hines v. Data Line Systems, Inc.,* 114 Wash. 2d 127, 134, 787 P.2d 8, 12 (1990) refers to reliance as if it were an element of a WSSA claim:

> The officers and directors argue that before they can be liable under RCW 21.20.010, **the investors must establish that defendants' misrepresentations were the proximate reason for their investments' decline in value. We disagree.** The investors need only show that the misrepresentations were material and that they relied on the misrepresentations in connection with the sale of securities.

(Emphasis added.) The only issue before the Court in *Hines* was whether *loss causation* was an element under the WSSA. The Washington Supreme Court accepted the trial court finding that investors relied on statements in the selling materials – a finding defendants *did not challenge* on appeal*.* The Court did not analyze reliance and the decision in no way rests upon reliance.

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 20

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1   Of course, *dicta* is not binding legal precedent.  *State v. Potter*, 68 Wash. App.

2   134, 150, 842 P.2d 481, 489 n.7 (1992).  The *dicta* in *Data Line* has nonetheless been

3   cited a number of times – also in *dicta* – as establishing reliance as an element of a

4   WSSA claim: *Goel v. Jain,* 259 F.Supp.2d 1128, 1139 (W.D. Wash. 2003); *Guarino v.*

5   *Interactive Objects, Inc.*, 122 Wash. App. 95, 118-119, 86 P.3d 1175, 1187-88 (2004),

6   *rev. denied*, 110 P.3d 756 (2005); *Stewart v. Estate of Steiner*, 122 Wash. App. 258, 263-

7   264, 93 P.3d 919, 922 (2004), *rev. denied,* 108 P.3d 1229 (2005).  While the evidence in

8   this case will clearly support a finding of reliance, plaintiffs nonetheless wish to preserve

9   their strongly-held view that it is not a necessary element of the claim.

10

11                    **e.    At a Minimum, Reliance is Presumed in Cases of Non-
                              Disclosure.**

12          Even for those securities liability provisions for which reliance is ordinarily a

13   necessary element such as liability implied under Section 10(b) and Rule 10b-5 of the

14   Securities Exchange Act of 1934  (as distinguished from §12(2) on which the WSSA is

15   based), positive proof of reliance is **not** required in cases which involve primarily a

16   failure to disclose.  *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972).

17   All that is required is a showing that the facts withheld were material—or that a

18   reasonable investor might have considered them important in making the investment

19   decision.  *Id.* at 154.  The obligation to disclose and the withholding of a material fact

20   are all that is necessary to establish causation.  *Id.*  The Supreme Court in *Affiliated Ute*

21   noted that a defendant "may not stand mute" in the face of relevant material information

22   and then argue that the plaintiff failed to prove reliance upon a specific misrepresentation.

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 21

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

*Id.* at 153.  Three years later, in *Blackie v. Barrack*, the Ninth Circuit quoted the same language in rejecting a defendant's argument that the plaintiff had failed to prove reliance.  *Blackie,* 524 F.2d 891, 905-06 (9th Cir. 1975).  The presumption has been widely employed ever since.  *See*, *e.g.*, *Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 769 (9th Cir. 1982).

Washington cases have followed the lead of the federal cases in applying the WSSA and held that "positive proof of reliance is not a prerequisite to recovery" where any omissions have occurred.  *Guarino v. Interactive Objects, Inc., supra,* 122 Wn.App. at 119.  Instead, once plaintiffs establish **any** material omission, plaintiffs' reliance is presumed and the burden is upon the defendants to rebut the presumption by "showing that the plaintiffs' decision would have been unaffected even if the omitted fact had been disclosed." *Id.*

### 7.      Rescissionary Damages.

Plaintiffs are entitled to rescissionary damages under the WSSA if they meet their burden that the Defendants are sellers and liable under Section 010.  *See* Wash. Rev. Code §§ § 21.20.010 and 21.20.430(1) (2002).  Section 430 of the WSSA states that any person who violates Section 010 *is liable*:

> [T]o the person buying the security from him or her, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security.

R.C.W. § 21.20.430 (1) (2001).

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 22

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 8.      Materiality.

A statement or omission is only material if a reasonable investor would consider it important in making an investment decision. *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-232 (1988).   Whether information is material also depends on whether the statement would significantly alter the "total mix" of information available. *Id.*  Put another way, the standard contemplates a showing that "under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC Indus.* at 449, 2132 (but does not require proof that disclosure of the omitted fact would have caused the reasonable shareholder to change his vote).

### 9.      Joint and Several Liability is Automatic.

The provisions of R.C.W. § 21.20.430(1) and (3) create joint and several liability among parties found to be primarily- and secondarily-liable under the statute. *See also Kaas v. Privette*, 12 Wash.App. 142, 151, 529 P.2d 23 (1974) *rev'd on other grounds.* Persons liable include the seller who passes title, persons who are deemed sellers because they were substantial contributing factors to the sale, control persons, partners, officers and directors of a seller, and employees of a seller who materially aid in the transaction. No more is needed for joint and several liability than that the defendants stood in one of those relationships to the investor.   Imposition of joint and several liability is an important protection for investors.  Washington cases have clearly held that the purpose of the WSSA is to protect investors. *Haberman v. Wash. Pub. Power Supply Sys.*, 109

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 23

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

Wash.2d 107, 125-6, 744 P.2d 1032 (1987). "To this end, [the Washington Supreme Court] has construed the WSSA broadly." *Id.* at 126.

### B.     The Negligent Misrepresentation Claim.

Washington has adopted the RESTATEMENT (SECOND) OF TORTS sections 551 and 552 (1977) as the standard for claims of negligent misrepresentation. *Guarino v. Interactive Objects, Inc.,* 122 Wash. App. 905, 129-30, 86 P.2d 1175, 1193 (2004). Negligent misrepresentation elements include (1) providing false information (2) in business transactions (3) justifiable reliance and (4) damages. *Hoffer v. State of Wash.,* 110 Wash.2d 415, 428, 755 P.2d 781 (Wash. 1988). THE RESTATEMENT SECOND OF TORTS § 552(1) describes negligent misrepresentation as:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Id.*

According to *Guarino,* a plaintiff must establish, in part, a duty to disclose or provide accurate information. *Guarino*, 122 Wash. App. at 130. The duty to disclose arises in a "quasi-fiduciary relationship" when (1) a special relationship of trust and confidence exists; (2) one party relies on superior knowledge or experience of the other; (3) one party has knowledge of a material fact of which the other party is unaware and (4) there exists a *statutory* duty to disclose. *Id. (quoting Richland School Dist. V. Mabton*

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 24

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1    *Sch. Dist.,* 111 Wash.App. 377, 386, 45 P.3d 580 (2002) (citing *Colonial Imports v.*

2    *Carlton N.W., Inc.,* 121 Wash.2d 726, 732 853 P.2d 913 (1993))).

3        **C.    The Breach of Contract Claim.**

4        Generally, a plaintiff in a contract action must prove a valid contract between the

5    parties, breach, and resulting damage.    *Northwest Independent Forest Mfrs. v.*

6

7    *Department of Labor & Industries*, 78 Wn.App. 707, 712, 899 P.2d 6 (1995) (citations

8    omitted).   Generally people have the right to make their agreements entirely oral, entirely

9
     in writing, or partly oral and partly in writing.  *Diel v. Beekman,* 1 Wn.App. 874, 879-80,
10

11   465 P.2d 212 (1970) citing *Barber v. Rochester,* 52 Wash.2d 691, 698, 328 P.2d 711

12   (1958).

13
         Plaintiffs will show that their investments in Rydyn were premised upon
14

15   agreements made with Anderson and Commercial Lending Northwest that if they

16   advanced funds to be loaned to Attesa and West, they would be paid back the monies

17
     advanced plus interest at 13.99% by a "takeout lender," and that until paid by the takeout
18

19   lender, the investment, through Rydyn, would be secured by a first deed of trust.   The

20   agreements were breached and damages have been suffered as a result.

21       **D.    The Civil Conspiracy Claim.**
22
         A civil conspiracy exists when there is an agreement by two or more persons to
23

24   accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful,

25   by unlawful means. *Corbit v. J.I. Case Co.,* 70 Wash.2d 522, 528-29, 424 P.2d 290

26   (1967).  A finding that a conspiracy exists may be based on circumstantial evidence,

27
     although the "circumstances must be inconsistent with a lawful or honest purpose and
28

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 25

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

reasonably consistent only with [the] existence of the conspiracy." *Sterling Business Forms, Inc. v. Thorpe,* 82 Wash.App. 446, 451, 918 P.2d 531 (1996), *review denied,* 130 Wash.2d 1026, 930 P.2d 1229 (1997).  While a finding that a conspiracy existed may be based on circumstantial evidence, mere suspicion is not a sufficient ground upon which to base a finding of conspiracy. *Corbit,* 70 Wash.2d at 529, 424 P.2d 290 (citing *Cheesman v. Sathre,* 45 Wash.2d 193, 273 P.2d 500 (1954)).  A conspiracy may be established by evidence that a party was aware of problems with third parties' investments, took no action to prevent further sales and continued to accept income from the fraud.  See *Herrington v. Hawthorne*, 111 Wn.App. 824, 842, 47 P.3d 567 (2002).

## IV.    JURISDICTION

### A.    The Court has Jurisdiction because Plaintiffs' Claims are Related to the Anderson Defendants' Bankruptcy Case.

Plaintiffs predicate their jurisdictional argument on 28 USC §1334(b), which provides:

> Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Plaintiffs concede their claims against defendants Commercial Lending Northwest, Rydyn and Attesa (and defendant Jo Bursey) are based on state law, not the Bankruptcy Code, even though it may be related to bankruptcy because of its potential effect on the Anderson defendants' bankrtupcy estate .  Plaintiffs similarly concede that, because their claims against these non-debtor defendants are not "proceedings arising

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 26

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1   under title 11", they do not fall within the Court's jurisdiction under the first prong of 28
2   USC §1334(b).
3
4       That being said, plaintiffs submit their claims against the non-debtor defendants
5   are "related to" the Anderson defendants' bankruptcy case and are within the Court's
6   non-exclusive jurisdiction pursuant to the second prong of 28 USC §1334(b).
7
8       In the Ninth Circuit, a bankruptcy court's discretion to retain jurisdiction over
9   matters within its §1334(b) "related to" jurisdiction is subject to the same considerations
10  –economy, convenience, fairness, and comity—that the district courts apply when
11  deciding to retain a supplemental state claim after federal claims have been dismissed.
12  *Menk v. Lapaglia et al. (In re Menk)*, 241 B.R. 896, 907, 43 Collier Bankr. Cas. 2d. (MB)
13  336 (9th Cir. BAP 1999) (citing *Carraher v. Morgan Elec., Inc. (In re Carraher)*, 971
14  F.2d 327, 328 (9th Cir. 1992); *Chapman v. Currie Motors, Inc.*, 65 F.3d 78,91 (7th Cir.
15  1995); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 910 (9th Cir. BAP 1995).
16
17      *Carraher* is particularly instructive.  Like the instant case, the Carrahers' fraud
18  case was originally filed in state court, but was then removed to the bankruptcy court as a
19
20  related case because of the pendency of the bankruptcy case.
21
22      Unlike the instant case, the issue before the Carraher court was whether the
23  bankruptcy court retained jurisdiction of the pendent state law claims after the bankruptcy
24  case had been dismissed.  The Carraher court said that it did, holding that Section 349 of
25  the Bankruptcy Code does not automatically divest bankruptcy courts of jurisdiction over
26
27  related cases when the underlying bankruptcy case is dismissed, but may retain the case,
28

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 27

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

subject to specified considerations.  Addressing those considerations, the Carraher court

first set forth the governing standards:

> In considering what standards govern the bankruptcy court's discretion in
> determining whether to retain a related case after dismissal of the underlying
> bankruptcy case, we, like other courts, turn for guidance to cases considering the
> authority of federal district courts to retain pendent state claims after the federal
> claims have been dismissed. . . . The Supreme Court has held that where a federal
> district court dismisses federal claims, the court must consider economy,
> convenience, fairness and comity in deciding whether to retain jurisdiction over
> pendent state claims.  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct.
> 614, 620-21, 98 L.Ed.2d 720 (1988).  The district court's weighing of these
> factors is discretionary, Harrell v. 20th Century Ins. Co., 943 F.2d 203, 205-06
> (9th Cir.1991). We review the court's decision to retain jurisdiction for abuse of
> discretion--in other words, unless we have "a definite and firm conviction that the
> court below committed a clear error of judgment in the conclusion it reached upon
> a weighing of the relevant factors."  United States v. City of Twin Falls, Idaho,
> 806 F.2d 862, 868 (9th Cir.1986), cert. denied, 482 U.S. 914, 107 S.Ct. 3185
> (1987).

It then applied those standards to the procedural history and facts of the dispute,

holding that it was certainly no less efficient and convenient for the bankruptcy court to

resolve issues than to send it to send them to the state courts. As to fairness, the Carraher

court noted that the proceedings had dragged on for six years and that it would have been

unfair to defendants to delay matters further by remanding these claims to state court

when the bankruptcy court could easily dispose of them. Finally, as for comity, the court

found the state court's interest in passing on the preclusive effect of issues that had or

would be decided by the federal court was small.

Plaintiffs believe the same considerations militate in favor of the Court's retaining

jurisdiction of their claims.  As the procedural history set forth in Section I makes clear,

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 28

**RANDALL | DANSKIN**
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

this case was first filed in Spokane County Superior Court over six years ago, in January 2005, and was on the verge of being tried in that court almost a year ago.  Simply put, it would be neither convenient nor fair to plaintiffs for the Court to abstain from hearing their claims and send them back to the state court, where they are unlikely to get a trial setting for another year.

Plaintiffs also believe it would uneconomical for the Court to abstain from hearing their claims.  As the discussion of the substantive nature of plaintiffs' claims in Section II makes clear, all of these defendants acted together in defrauding plaintiffs of their investments, and all are jointly and severally liable to plaintiffs under the WSSA, as persons who materially misrepresented material facts, as persons who breached their contract with plaintiffs, or as civil co-conspirators.  Requiring plaintiffs to try their claims against the Anderson defendants in one court and the remaining defendants in another would not only frustrate notions of judicial economy, but would impose significant financial difficulties on plaintiffs, who would essentially be paying for two separate trials.

Finally, although plaintiffs' claims against the non-debtor defendants are not "core proceedings" under the Bankruptcy Code, their outcome will very likely have a determinative effect on the Anderson defendants' bankruptcy estate, especially if the Court determines Margie Anderson is exclusively or principally responsible for plaintiffs' losses.

Plaintiffs respectfully ask the Court to retain subject matter jurisdiction of plaintiffs' claims over all of the named defendants.

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 29

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052

1    DATED this 10th day of May, 2011.

2                                      RANDALL | DANSKIN

3

4                        By:    s/Douglas Siddoway
                                _____
5                                Douglas Siddoway, ISB #2388
                                 Attorneys for Plaintiffs
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 30

                              **RANDALL | DANSKIN**
                           A Professional Service Corporation
                      1500 BANK OF AMERICA FINANCIAL CENTER
                             601 WEST RIVERSIDE AVENUE
                           SPOKANE, WASHINGTON  99201-0653
                                   (509) 747-2052

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of May, 2011 I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participants via first class mail, postage prepaid addressed as follows:

| | |
|---|---|
| John Doe Anderson<br>6622 N. Perrine Rd.<br>Spokane, WA 99217 | Attesa Corporation<br>1310 West North Five Mile Rd.<br>Spokane, WA 99208 |
| Margie A. Anderson<br>6622 North Perrine Road<br>Spokane, WA 99217 | Rydyn Enterprises, LLC<br>6622 N. Perrine Rd.<br>Spokane, WA 99217 |
| Jo Bursey<br>14207 Oak Valley Drive<br>Orlando, FL 32826 | Commercial Lending Northwest, Inc.<br>9319 E. Trent Ave.<br>Spokane, WA  99206 |
| Attesa Corporation<br>825 N. Sargent Rd.<br>Spokane Valley, WA  99212 | |

s/ Douglas Siddoway
Douglas Siddoway, ISB #2388
Attorney for Plaintiffs

F:\USERS\28264\ANDERSON BANKRUPTCY\Brief (Jurisdiction and Damages).doc

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' AMENDED MOTION FOR
DEFAULT JUDGEMENT - 31

RANDALL | DANSKIN
A Professional Service Corporation
1500 BANK OF AMERICA FINANCIAL CENTER
601 WEST RIVERSIDE AVENUE
SPOKANE, WASHINGTON  99201-0653
(509) 747-2052